**WINSTON & CO., Inc., v. GEORGIA & F. R. R. et al.**

District Court, W. D. South Carolina. July 30, 1929.

Grier, Park & McDonald and J. B. Park, all of Greenwood, S. C., and J. Wm. Thurmond, of Edgefield, S. C., for plaintiff.

Hull, Barrett & Willingham, of Augusta, Ga., Nicholls, Wyche & Byrnes, of Spartanburg, S. C., and W. H. Nicholson, of Greenwood, S. C., for defendant Georgia & F. R. Co.

Wilton H. Earle, of Greenville, S. C., and White & Case, of New York, N. Y., for defendant New York Trust Co.

GLENN, District Judge. This suit comes before me on a notice to refer the issues to a special master for trial. The defendant also gave notice that it would ask that the questions of fact arising in the suit be submitted to a jury for trial as provided by section 5660, volume 3, Code of Laws of South Carolina.

Afterwards the defendant gave notice of a further motion to dismiss the summons and complaint upon the ground, first, that a legal and equitable cause of action are joined in one suit; and, second, that the court has no jurisdiction to try the cause because it is an action at law and not a suit in equity; and, failing in this motion, the defendant moved that the action be transferred from the equity side of the court to the law side, for the reason that plaintiff's cause of action is one at law and not in equity. I heard all of these motions together, since they embrace in my opinion the determination of only one question, to wit, whether or not the court of equity has jurisdiction to try the cause set forth in the pleadings.

The pleadings are long, and some brief description of them might be advisable to a clear understanding of the questions involved. It appears from the pleadings that suit on the equity side of the court was originally brought by the plaintiff, asking for the payment of certain work done and material furnished under a contract which existed between the plaintiff and the defendant for the building of the Georgia & Florida Railroad from Augusta, Ga., to Greenwood, S. C., a distance of some 57 miles. That contract, which was admitted to have existed between the parties, provided for the building of the railroad at a fixed sum, except excavation, which was to be measured and paid for by the cubic yard, and provision was made for extra and additional work. The approximate funds thought necessary to build the railroad and pay the contractor the contract price were derived from the sale of bonds and placed on deposit with the defendant New York Trust Company, as trustee, and it was alleged that this fund had practically been exhausted, and that no additional funds had been raised and placed with the trustee to pay the contract price, which on account of the alleged errors in the estimates as before made had increased so much as to require practically $1,000,000 more than was originally provided. The contractor, in the absence of provision made for the funds, stopped work after notice to the defendant, and brought this suit in equity, asking for pay for the work actually done up to that date, and material and labor furnished, and that the defendant be enjoined from making requisition upon the balance of the funds in the hands of the trustee, except to pay for the work done and the material so furnished by the contractor. A temporary restraining order was granted by his honor, Judge Watkins, and, pending the hearing of this original suit, the plaintiff and the defendant made a supplemental contract for the settlement of the differences between them, and the original suit was to be dismissed upon the performance of certain things mentioned and described in that contract of settlement, but was to be held until performance.

In due course a supplemental bill was, after the usual notice, allowed to be filed, setting forth, briefly, that plaintiff had complied with the contract of settlement, the execution of which contract both parties admit, and that the defendant had failed and refused to pay for the work done and material furnished, or to measure and pay for, in accordance with the supplemental contract, the work which had theretofore been done, and which was required to be measured, embracing all of the excavation done over the whole of the line, and it also asks for a continuance of the injunctive relief asked for in the original bill against the balance of the funds in the hands of the trustee, and for the foreclosure of a mechanic's lien which had been filed against the railroad.

The defendant answered the supplemental bill, denying the material allegations, and setting up performance on its part and a counterclaim against the plaintiff, which it alleges

grows out of the improper manner in which the work was done by the plaintiff.

This brief review of the allegations of the two bills, which is not intended to be exhaustive, is sufficient to describe the general tenor of the pleadings, upon which these motions were heard.

A casual examination of the pleadings clearly discloses that at the very foundation of this suit, and that upon which everything else incidental to the suit depends, is an account, so intricate, complicated, long, and burdensome that it would in my opinion be a practical denial of justice to require a jury to state it. The excavation of 57 miles of road, amounting to over $1,500,000, according to defendant's estimates, much more according to plaintiff's, other items too numerous to mention, increasing the charges to around $2,000,000, payments made of around $1,700,000, the material furnished embracing all kinds of railroad accessories, charges and countercharges, disclose a case peculiarly cognizable by a court of equity. The methods of investigation peculiar to courts of equity can alone bring about a proper statement of an account of this character.

In Kirby v. Lake Shore R. R., 120 U. S. 130, 134, 7 S. Ct. 430, 432, 30 L. Ed. 569, 571, where the accounts could hardly have been more intricate, complex, long, and confusing, as is apparent in this case, the court says:

"The case made by the plaintiff is clearly one of which a court of equity may take cognizance. The complicated nature of the accounts between the parties constitutes itself a sufficient ground for going into equity. It would have been difficult, if not impossible, for a jury to unravel the numerous transactions involved in the settlements between the parties, and reach a satisfactory conclusion as to the amount of drawbacks to which Alexander & Co. were entitled on each settlement. 1 Story, Eq. Jur. § 451. Justice could not be done except by employing the methods of investigation peculiar to courts of equity."

An able and an elaborate review of the authorities on this subject will be found in the recent case of Goffe & Clarkener v. Lyons Milling Co. (D. C.) 26 F.(2d) 801. While this opinion is not by an appellate court, the reasoning of Judge McDermott and the authorities reviewed by him are conclusive.

In Dewey Portland Cement Co. v. Texas Bldg. Co. (C. C. A.) 234 F. 622, where the accounts were apparently nothing like as long or complicated as in the case at bar, the court reversed the trial court for transferring the cause to the law side, saying:

"The accounting itself is so long and complex as to make it wholly unfit for submission to a jury. We have not attempted to state all the features of complexity disclosed by the pleadings. Sufficient, we think, has been said to show that upon well-established principles of equity and the repeated decisions of this court the case is one for a chancellor and not for a jury. Gunn v. Brinkley Car Works & Mfg. Co., 66 F. 382, 13 C. C. A. 529; Hayden v. Thompson, 71 F. 60, 17 C. C. A. 592; McMullen Lbr. Co. v. Strother, 136 F. 295, 69 C. C. A. 433; Castle Creek Water Co. v. City of Aspen, 146 F. 8, 76 C. C. A. 516, 8 Ann. Cas. 660; Fechteler v. Palm Bros. & Co., 133 F. 462, 66 C. C. A. 336."

In Strang v. Greenwood Railway (C. C.) 77 F. 498, which embraced the statement of an account, and the foreclosure of a mechanic's lien, which lien the court held did not even exist, Judge Simonton held that the cause embraced "an account between [the] parties running over a series of months, complicated and intricate, which cannot be unraveled before a jury so as to give complete and adequate remedy at law," and retained the cause in the court of equity.

Not only is the proper statement of a complex and intricate account at the very foundation of both the original and the supplemental bills, but the original bill asked for relief which could be granted only by a court of equity, and was purely equitable in its nature, and a court of equity, having once assumed jurisdiction, will hold the suit until full and complete equity has been done. Camp v. Boyd, 229 U. S. 530, 33 S. Ct. 785, 57 L. Ed. 1317; Shaffer v. Carter, 252 U. S. 37, 40 S. Ct. 221, 64 L. Ed. 445; Ober v. Gallagher, 93 U. S. 199, 23 L. Ed. 829.

The supplemental bill, however, also asks for the foreclosure of the alleged lien created by section 5691 of the Civil Code 1922, for labor performed and for material furnished and actually used in the construction of a railroad. This lien is referred to as a mechanic's lien, because the statute prescribes the procedure relative to mechanics' liens.

The state procedure is by petition, and is a special statutory proceeding, having none of the incidents of an action or suit, except the trial of the naked question of whether there is a lien and the amount of it. No judgment in personam can be rendered. In Tenney v. Anderson Water, Light & Power Co., 67 S. C. 11, at page 17, 45 S. E. 111, 113, where the state court decisions upon the subject are reviewed, the court draws the following conclusions:

"That, while the plaintiff may maintain

an action under the Code of Procedure on his contract, 'in like manner as if he had no lien for the security of his debt,' the statute affords the only remedy for the enforcement of the lien, and he cannot resort to an independent action, under the Code, for the foreclosure of such lien. That the proceeding was brought under the statute. That as this court has decided that a plaintiff or petitioner cannot under the statutory proceeding recover a judgment in personam against the defendant, there is no good reason why a defendant should be allowed to allege a state of facts that would enable him to recover a judgment in personam against the plaintiff."

 The question, therefore, arises whether, in a suit already commenced in a federal court of equity, that court can by supplementary bill enforce this statutory remedy, or whether the petitioner will be required to file a proceeding in the federal court similar to the proceeding required by the state statute. It is well settled by the decisions of the federal court that the foreclosure of a mechanic's lien is one that is peculiarly within the province of a court of equity, for the purpose of equity is not only to do away as nearly as possible with a multiplicity of suits, but the foreclosure of a mechanic's lien requires all of those incidental features which are common to the foreclosure of a mortgage.

In Sheffield Furnace Co. v. Witherow, 149 U. S. 574, 13 S. Ct. 936, 939, 37 L. Ed. 853, 856, the Supreme Court says of such liens:

"And the foreclosure of a mechanics' lien is essentially an equitable proceeding. As said by Mr. Justice Field, speaking for the court in Davis v. Alvord, 94 U. S. 545, 546 [24 L. Ed. 283, 284]: 'It is essentially a suit in equity, requiring specific directions for the sale of the property, such as are usually given upon the foreclosure of mortgages and sale of mortgaged premises.' Idaho & O. Land Imp. Co. v. Bradbury, 132 U. S. 509 [10 S. Ct. 177] 33 L. Ed. 433. And it may well be affirmed that a state, by prescribing an action at law to enforce even statutory rights, cannot oust a federal court, sitting in equity, of its jurisdiction to enforce such rights, provided they are of an equitable nature. In Robinson v. Campbell, 16 U. S. (3 Wheat.) 212, 222 [4 L. Ed. 372, 375] it was said: 'A construction, therefore, that would adopt the state practice in all its extent would at once extinguish, in such states, the exercise of equitable jurisdiction. The acts of Congress have distinguished between remedies at common law and in equity, yet this construction would confound them. The court, therefore, thinks that to effectuate the purposes of the legislature the remedies in the court, of the United States are to be at common law or in equity, not according to the practice of state courts, but according to the principles of common law and equity, as, distinguished and defined in that country from which we derive our knowledge of those principles.' Hooper v. Scheimer, 64 U. S. (23 How.) 235 [16 L. Ed. 452]; Sheirburn v. [De] Cordova, 65 U. S. (24 How.) 423 [16 L. Ed. 741]."

In Re Interstate Refineries, Inc. (D. C.) 18 F.(2d) 360, it was contended that such lien could not be enforced in bankruptcy, and the court said:

"It will be noted from these decisions that the courts acknowledge the existence of the right, but express their inability, under the procedure outlined by the statute, to enforce the lien where a general judgment has been obtained. There is presented, therefore, the anomalous and usually forbidden situation of a right without means to assert it.

"Equity is alert to aid in a situation exactly like this, for equity regards substance rather than form. The procedure here is equitable in its nature, and in the interest of justice, we look through the forms of statutes to the substance thereof, and enforce rights as they are found to exist."

See, also, Hooven, Owens & Rentschler Co. v. Featherstone (C. C.) 99 F. 180, Armstrong Cork Co. v. Merchants' Refrigerating Co. (C. C. A.) 184 F. 199, Hatcher v. Hendrie & Bolthoff Mfg. & Supply Co. (C. C. A.) 133 F. 267.

Courts of equity adapt their proceedings to the exigencies of any particular case, and will enforce legal as well as equitable rights, wherever the case demands it, or it is beneficial to protection of the parties. Neale v. Neale, 9 Wall. 1, 19 L. Ed. 590; Pease v. Rathbun-Jones Engineering Co., 243 U. S. 273, 37 S. Ct. 283, 61 L. Ed. 715, Ann. Cas. 1918C, 1147; Greene v. L. & N. Ry., 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88. In the Greene Case the court says:

"It is a familiar maxim that 'a court of equity ought to do justice completely, and not by halves;' and to this end, having properly acquired jurisdiction of a cause for any purpose, it should dispose of the entire controversy and its incidents, and not remit any part of it to a court of law. Camp v. Boyd, 229 U. S. 530, 551, 552, 33 S. Ct. 785, 57 L. Ed. 1317, 1326, 1327; McGowan v. Parish,

237 U. S. 285, 296, 35 S. Ct. 543, 59 L. Ed. 955, 963."

The equitable jurisdiction of a federal court is derived from the Constitution, and cannot be limited either by state statutes or acts of Congress, but follows and grants relief in those cases in which equitable jurisdiction obtained at the time of the passage of the Constitution, to wit, the English chancery courts. It therefore recognizes every lien or right fixed by the statutes of a state, and is not limited to the procedure or the remedy fixed by the statute.

I am satisfied that the foreclosure of the alleged mechanic's lien is one of purely equitable cognizance, and is incidental to the suit in equity on the account for work done and material furnished. On the whole, the suit is one which ought to be referred to a master, and I will file a separate order appointing a special master to hear and report upon all issues raised by the pleadings, and this order will also refuse the separate motions made by the Georgia & Florida Railroad.