HILL et al. v. NORTHERN PAC. RY. CO.

(Circuit Court, D. Washington, N. D. November 5, 1900.)

1. RELEASE—IMPEACHMENT IN ACTION AT LAW.

A written release, intentionally executed by a plaintiff, on payment by defendant of an agreed sum in settlement of the cause of action, cannot be impeached in an action at law in a federal court on the ground that the plaintiff was induced to accept the terms of settlement, and to execute the release, by false and fraudulent representations.

2. FEDERAL COURTS—CONFORMING TO STATE PRACTICE—EQUITABLE ISSUES IN ACTIONS AT LAW.

Rev. St. § 914, requiring the practice in the federal courts in actions at law to conform as nearly as may be to the state practice, does not render a state statute permitting equitable issues to be litigated in an action at law applicable to the federal courts in such state, which maintain the distinction between actions at law and suits in equity, nor is the rule different because a suit has been removed from a state court.[1]

Action at law to recover damages for the death of the husband and father of the plaintiffs, caused by an injury to the deceased while he was in the employ of the defendant as a brakeman.

In its answer to the complaint, the defendant denies the negligence charged, and pleads as an affirmative defense a complete settlement of the demand

---

[1] Conformity of practice in common-law actions to that of state courts, see notes to O'Connell v. Reed, 5 C. C. A. 594, and Insurance Co. v. Hall, 27 C. C. A. 392.

for damages herein, and payment of the sums of money which the widow of the deceased agreed to accept as compensation to her in her own right, and to her for the benefit of her minor daughter, who appears as her co-plaintiff; that said settlement was upon the petition of the widow as guardian of her child, approved and ratified by the superior court for Pierce county; and that for the consideration of said payments the widow, for herself and as guardian for her co-plaintiff, executed and delivered to the defendant separate written releases of the claims now in suit. The amended reply to said answer admits the facts alleged in the answer relating to the settlement and the execution of releases, but in avoidance thereof alleges that the widow was induced to give her assent to the settlement, and to accept the money paid by the defendant, and to execute the releases by certain representations made to her of facts tending to exculpate the defendant, which were and are false and fraudulent, and that she can prove the falsity of said representations by competent witnesses upon the trial of this action; that she would not have given her assent to the settlement if such representations had not been made, and that she did not know at the time of the settlement that said representations were false, or that any evidence could be obtained to prove the contrary state of facts. Argued and submitted upon a demurrer to the amended reply. Demurrer sustained.

Lewis, Hardin & Albertson, for plaintiffs.
Struve, Allen, Hughes & McMicken, for defendant.

HANFORD, District Judge (after stating the facts). The demurrer to the amended reply raises the question whether, under the laws of the United States governing the practice of courts in an action at law, a full settlement of the controversy and a written release of the plaintiffs' demand against the defendant can be impeached and annulled for false and fraudulent representations by which the plaintiff in the action was induced to accept the terms of settlement and execute the release. In their argument counsel for the plaintiffs urge that, under the Code of Civil Procedure of this state, a release of a right of action may be avoided in an action at law in the manner proposed in this case, and this is true; and they also urge that under section 914, Rev. St. U. S., the procedure in common-law actions in this court must conform to the practice of the state courts, and hence they have the same right to litigate the issue of fraud, and impeach the settlement and release, which they would have if the case had remained in the state court in which it was commenced. If the proposition, as stated, is true, it must logically lead to the result that in all the code states where legal and equitable relief, or either, may be demanded and obtained in a single action, section 914, Rev. St. U. S., has the effect to abolish the distinction between actions at law and suits in equity in the federal courts; but the contrary intention is clearly expressed by the words of the section referred to. The jurisdiction and practice of the federal courts as courts of equity is preserved, and the forms and modes of procedure in common-law actions is made to conform to the practice of state courts, only so far as may be consistently with the organization and limited jurisdiction of the federal courts. Robinson v. Campbell, 3 Wheat. 212, 4 L. Ed. 372; Fenn v. Holme, 21 How. 481, 16 L. Ed. 198; Hooper v. Scheimer, 23 How. 235, 16 L. Ed. 452; Sheirburn v. De Cordova, 24 How. 423, 16 L. Ed. 741; Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873;

Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358; Furnace Co. v. Witherow, 149 U. S. 574, 13 Sup. Ct. 936, 37 L. Ed. 853.

This defense to the action is an executed contract, and proceedings to set it aside should be in equity, because the court, in relieving the plaintiffs from the obligation of their contract after it has been executed, must exert extraordinary power. "Canceling an executed contract is an exertion of the most extraordinary power of a court of equity." Delaine Co. v. James, 94 U. S. 207–214, 24 L. Ed. 114.

The fact that the cause was commenced originally in a state court, and removed into this court by the defendant, does not affect the question. The law which gives the right to remove a case into the national forum entitles the parties to whatever advantage and subjects them to whatever disadvantage there may be on either side in litigating, according to the procedure of the national courts in which the distinction between actions at law and suits in equity is preserved. 18 Enc. Pl. & Prac. 361, 362.

Passing, now, to consideration of the question as one of practice under the laws of the United States, I deem it not improper to remark that an issue as to false representations, inducing a party to release a cause of action, should not be submitted to a jury in connection with evidence of an injury alleged to have been caused by a wrongful act, whereby the party accused of making the false representations will be practically precluded from controverting the original tort by the fact of having actually rendered compensation. The effect of a payment in consideration of a release from the plaintiff's demand, as an admission of liability, can scarcely be avoided in any case; and if a party claiming damages can obtain money by executing a release, and then, while retaining the money, avoid the release by charging false representations, and in the same proceeding bring to bear upon the minds of the triors the force of an implied admission of negligence or other wrong causing an injury, the practice of settling claims for damages without litigation, which has become common in this district, will cease, and sufferers from accidental injuries as a class will not be gainers thereby. No person will contend that a release of a right of action induced by fraud and deceit ought to bar an action to enforce the original liability when the party defrauded proceeds in a fair way to have it annulled, but, in order to come as near as may be to impartial justice in all such cases, proceedings to enforce the liability ought to be stayed until the issue of fraud has been determined in a separate proceeding. I concede that a party should not be heard to complain when caught in his own trap, but this argument is only good in cases in which the charge of fraud is sustained by the evidence. It is easy to charge fraud in any case, and the court should be governed by a general rule, which will give hope of justice in all cases. I consider that the supreme court of the United States has given a just rule applicable in the decision of this question. The rule makes a distinction between cases where the execution of a written instrument has been obtained by trick or fraud, to which the assent of the party executing it was not given intentionally, and cases where in-

struments have been executed intentionally and understandingly, but where the mind of the party has been affected and assent secured by means of false representations and deceit, and holds that in cases where the execution of an instrument has been obtained by fraud or trick, without the assent of the party executing it, the instrument is entirely void, and should be disregarded in an action at law in which a plea of non est factum has been interposed, but in cases of the other class written instruments intentionally executed are only voidable at the option of their makers, and effect must be given to them as valid instruments until they are annulled by a judicial decree in a direct proceeding for the purpose. Hartshorn v. Day, 19 How. 211, 15 L. Ed. 605; George v. Tate, 102 U. S. 564–571, 26 L. Ed. 232. The decision in the case of Railway Co. v. Harris, 158 U. S. 326–333, 15 Sup. Ct. 843, 39 L. Ed. 1003, is in harmony with the previous decisions of the supreme court, and my attention has not been called to any case in which the supreme court has departed from the above rule. With all due respect for the decision of the circuit court of appeals for the Sixth circuit in the case of Wagner v. Insurance Co., 33 C. C. A. 121, 90 Fed. 395, this court must be bound by the law as it has been declared by the highest court in this country.

The same effect must be given to this instrument as to a sealed instrument, for the reason that in this state "the use of private seals upon all deeds, mortgages, leases, bonds, and other instruments and contracts in writing" has been "abolished." 1 Ballinger's Ann. Codes & St. (Wash.) § 4523. The settlement and release pleaded in the answer and admitted by the reply was executed with all the formality required by the laws of the state, and since the legislature has, by the enactment above referred to, abolished private seals as a means of solemnizing the execution of written contracts, no distinction can be recognized between sealed instruments and other writings which the parties executing them have intended to make valid. Demurrer sustained.