DRAKE et al. v. CITY OF ST. PAUL et al.,
and four other cases.
Nos. 9575, 9577–9580.

Circuit Court of Appeals, Eighth Circuit.
May 6, 1933.

Rehearing Denied June 12, 1933.

Thomas C. Fitzpatrick, of St. Paul, Minn. (William F. Hunt and Calvin Hunt, both of St. Paul, Minn., on the brief), for appellants Sophia J. Badger et al., Westcott W. Price and Oppenheim Realty Co.

Oscar E. Holman, pro se.

William H. Lightner, of St. Paul, Minn., for appellants Harry T. Drake et al.

Lewis L. Anderson, of St. Paul, Minn. (Louis P. Sheahan, of St. Paul, Minn., on the brief), for appellees.

Before STONE, VAN VALKEN-BURGH, and BOOTH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

These cases, by stipulation consolidated for presentation in this court, involve the asserted right of the appellee city to collect, for its assessments against the property of appellants under a municipal proceeding for the widening of a city street, out of awards made by commissioners for the taking of the same properties under a condemnation proceeding by the government. Omitting all intermediate matters not material here, the following proceedings in federal and state jurisdictions form the basis of the various contentions of the parties to this controversy.

On or about June 14, 1929, the United States filed its petition in the federal District Court at St. Paul for the condemnation of certain lands in Block 30, in the city of St. Paul, for a post office site. The lands includ-

ed the parcels belonging to the appellants and involved in these actions. August 8, 1929, the condemnation was granted and commissioners were appointed. November 22, 1929, these commissioners filed their report and awards of damages for the taking of the lands. December 23, 1929, the government moved for immediate possession of the condemned properties. This application met with no objection, and an order of court was made on the same date granting such possession. The city appealed to the federal District Court from the awards of the commissioners on the ground that they had omitted to award damages to the city for the taking of its interest in said properties on account of certain assessments, which will hereinafter be discussed. This appeal was denied in the federal District Court, and its judgment was affirmed by this court, because the claims for these special assessments were far less than the awards for the properties condemned. City of St. Paul v. Certain Lands (C. C. A.) 48 F.(2d) 805. Appellants took no appeal from the awards, and the same were confirmed May 2, 1931. The government thereupon paid into court the full amount of the awards with interest, and shortly thereafter paid for the respective properties taken, retaining, by stipulation, sufficient funds, left on deposit with the clerk of the United States District Court to cover the amounts claimed by the city.

These claims of the city arose as follows: April 21, 1929, the city counsel of St. Paul, by resolution, took the initial step in instituting a public improvement—the widening of Third street in said city. Block No. 30, condemned by the government for the post office site aforesaid, abuts upon Third street. October 2, 1929, the city council approved a preliminary assessment presented by the city's finance commissioner. October 22, 1929, the city council approved the awarding of a contract for the major portion of the physical work on this improvement. November 2, 1929, the list of assessments was published in accordance with charter requirement. January 31, 1931, the assessments were finally confirmed in the state district court. January 15, 1932, the Supreme Court of Minnesota, on appeal, reversed this judgment of the state district court, and ordered a reassessment. In re Third Street Improvement, 185 Minn. 170, 240 N. W. 355.

The contention of the city is that it has an equitable lien upon the awards made by the commissioners in the federal court, and was so entitled at the time the awards were filed.

That this lien was consummated through confirmation by the state district court. The position of the appellants is that there was no possibility of confirming the assessments until the day after the awards were filed at the earliest. They further object to said assessment record "in so far as it relates to any proceedings or acts subsequent to November 22, 1929," on which date they claim the United States acquired the lands condemned. It is pointed out that, by the action of the Supreme Court of Minnesota in reversing the judgment of the state district court, the assessments levied by the city lack confirmation and, therefore, have no legal effect; that a reassessment is necessary and has been ordered; that, "under the statutes of Minnesota the title to land acquired in condemnation proceedings reverts back to the date of the filing of the commissioner's award"; that the original assessments were annulled January 30, 1931, more than one year after the vesting of title in the United States. The trial court in its memorandum opinion, 3 F. Supp. 574, says: "It is clear that the city has had at no time a lien upon the parcels of land here involved, and that it cannot, even upon a reassessment, establish an enforcible lien against them. The only question, then, is whether, in equity, the city may have recourse to the funds in the hands of the clerk to enforce whatever claims it would have had against these lands had the title to them not passed to the United States."

Its doubts as to the rights of the city to prevail in this action are thus stated: "I realize that the question of the right of the city to have recourse to the funds in the hands of the clerk is, under the circumstances, a doubtful one, and the only case which is similar and which appears to sustain my views is the case of Bowers v. Town of Bloomfield, 81 N. J. Eq. 163, 86 A. 428, 45 L. R. A. (N. S.) 451. In that case the improvements were not only completed before the final award, but the assessments were also completed, and it further appears that the improvement was made at the request of the property owners who were assessed, so that there are distinguishing features."

In City of St. Louis v. Dyer et al. (C. C. A.) 56 F.(2d) 842, a case presenting many features similar to the instant case, we had occasion to state the conditions under which a city, assessing benefits to property by proposed improvements, may recover therefor out of amounts awarded as damages for taking the same property in condemnation proceedings. We said [loc. cit. 844 of 56 F.

(2d)]: "We agree with the trial judge that 'the courts have, for the most part, resolved it (the question at issue) upon inquiry whether there was an existing, rather than a mere potential lien.' Where such so-called potential liens have been recognized it will be found, generally, that special equities have arisen from the fact that the work upon the improvements had been completed, the value enhanced, or the benefit which might accrue to the property included by court or viewers in the amount of the awards before the title to the land condemned had passed to the condemner. Otherwise the rule of protection, that a lienholder may have his lien satisfied out of a fund awarded and paid into court as a substitute for the land taken, extends to judgment liens, tax liens, and the like, and 'applies only to lienholders or creditors of the interest taken or affected, and to liens existing at the time the property is taken.' 20 Corp. Jur. p. 855, par. 290. See, also, In re Torchia (C. C. A. 3) 188 F. 207."

█ Applying the foregoing rules to the facts before us, we find (1) that, as correctly held by the trial court, the city has, at no time, had a lien upon the lands involved; nor can it establish an enforceable lien by reassessment. (2) The condemnation proceeding of the United States was brought under chapter 41, Mason's Minnesota Statutes for 1927 (section 6537 et seq.), and under provisions of the Conformity Act of Aug. 1, 1888, 25 Stat. 357, set out in 40 USCA §§ 257 and 258. City of St. Paul v. Certain Lands, etc., (C. C. A. 8) 48 F.(2d) 805. It is governed, therefore, by the laws of Minnesota relating to such proceedings; and, in such, in Minnesota, the title passes upon payment of the award, and in all cases relates back to the date of filing the award by the commissioners. The taking occurs at the date of filing. Dunnell's Minnesota Digest (1st Ed.) Vol. 1, p. 659, § 3016, and cases cited; State ex rel. City of St. Paul v. Chicago, St. P., etc., R. Co., 85 Minn. 416, 89 N. W. 1; Ford Motor Co. v. Minneapolis, 147 Minn. 211, 179 N. W. 907; McRostie v. City of Owatonna, 152 Minn. 63, 188 N. W. 52. This status has been recognized by this court. Commercial Station Post Office v. United States, 48 F.(2d) 183, 186. Interest is paid from the date of the award, the "taking" is of that date, and the rights of the parties are then fixed. The commissioners filed their awards November 22, 1929. It is evident that work upon the city improvement had not been substantially completed at that time. In fact it had not been entirely completed at the time this case was tried. It was not until October 22, 1929, that the contract for the major portion of the work was approved—just one month prior to filing of the awards in the condemnation proceeding. A preliminary assessment, presented by the city's commissioner of finance, was approved by the council October 2, 1929, preparatory to submission of proposed assessments for confirmation to the state district court. The list of assessments was not published until November 2, 1929; appellants, within due time, filed objections and answers thereto; a hearing thereon was held in April, 1930, and a final judgment in the state district court confirming the assessments was entered January 31, 1931. This judgment was reversed and the assessments annulled by the Supreme Court of Minnesota. It would thus appear that neither the work was substantially completed nor that any valid municipal assessments existed at the time the title to the lands passed to the condemner. No special equities, therefore, had arisen.

But, however this may be, there is no evidence before us that the benefit which might accrue to the property from the widening of Third street was included by court or commissioners in the amount of the awards filed. It cannot be presumed that the commissioners would make such an inclusion in the state of the record respecting the pendency of objections to, and the delayed confirmation of, the assessments, afterwards reversed. Certainly no reassessment that may be made can establish a lien claim upon the awards now in the registry of the federal District Court. If we were to indulge the presumption that the commissioners took into consideration the amounts originally assessed by the city in making their awards, we are met by the situation that those assessments have been wiped out by the decision of the Supreme Court of Minnesota on appeal. No amounts are before us for allowance. We cannot presume further that the same amounts will be reassessed, even if such action could be entertained in this proceeding. Nor can we charge the funds, otherwise belonging to appellants, with some conjectural amounts, having no present legal existence. Without doubt the trial judge felt sympathy with the position of the city which has spent large sums in making an improvement, which, under normal conditions, would perhaps be presumed to enhance the value of abutting property, and in this sentiment we join. We cannot, however, disregard the settled principles of law which forbid the allowance of appellee's claims in the instant case.

The contentions of appellants that the federal court is without jurisdiction in equity to enforce a lien of this sort, if it exists, is rejected upon the authority of Sheffield Furnace Co. v. Witherow, 149 U. S. 574, 13 S. Ct. 936, 37 L. Ed. 853, and many cases of like tenor. Also the contention that the city of St. Paul has an adequate remedy at law cannot be indulged. That remedy, to deprive a federal court of jurisdiction, must be as certain, complete, prompt and efficient to attain the ends of justice as the remedy in equity. Atchison, T. & S. F. R. Co. v. Sullivan (C. C. A. 8) 173 F. 456; Kilbourn v. Sunderland, 130 U. S. 505, 9 S. Ct. 594, 32 L. Ed. 1005. And an adequate remedy at law, to bar equity, must exist equally in the federal, as in the state court. Coler v. Board of Commissioners (C. C.) 89 F. 257; Smyth v. Ames, 169 U. S. 466, 516, 18 S. Ct. 418, 42 L. Ed. 819.

However, for the reasons hereinabove stated, the decree below must be reversed, and it is so ordered.